(No. 3080—

H. G. Goelitz Company, Claimant, vs. State of Illinois, Respondent.

Opinion filed May 10, 1939.

Markman, Donovan & Sullivan, for claimant.

John E. Cassidy, Attorney General; Murray F. Milne, Assistant Attorney General, for respondent.

Mr. Justice Yantis delivered the opinion of the court:

On February 8, 1934 a contract was entered into between respondent through its Department of Public Works and Buildings and the claimant, whereby the latter in consideration of the recitals therein, agreed to furnish the materials and labor necessary to construct a section of asphalt pavement on a portland cement concrete base forty (40) feet wide on S. B. I. Route No. 18 in the City of Chicago, in accordance with the specifications and proposal previously signed by the respective parties. The improvement in question began near the intersection of North Clark Street and Lincoln Park west and extended in a northerly direction for a total distance of two thousand three hundred eighty-five (2,385) feet. The work under this original contract was entirely completed by the claimant and no question arises as to the work done thereunder. This claim is for additional work that was not included in the original plans.

On May 10, 1934 the claimant was authorized and directed to remove existing concrete safety island at the intersection of Clark Street and Ogden Avenue, and to construct new islands according to revised plans which were submitted with the authorization by the Division of Highways. This extension did not adjoin the improvement covered by the original contract but was located approximately four hundred fifty (450) feet south of the southern end of the original proposed improvement. This additional work involved a different type of machinery and labor to that necessitated by

the work in the original contract. This additional work was in a comparatively new pavement, consisting substantially of three and one-half (3½) to four (4) inches of sheet asphaltic wearing course laid on approximately eight (8) to ten (10) inches of exceedingly good concrete base, whereas the excavation work included in the original proposal was of a considerably lighter character. Such excavation work on the additional project could not be done by the use of any power shovel without first loosening the pavement that was to be removed. The Board of Underground Work of Public Utilities of Chicago objected to the use of heavy breaking machinery for breaking up the pavement at this site because of the possibility of destroying underground utilities thereunder. Claimant used air compressors and air hammers to remove the concrete. The cost of excavating covered by such extension or additional work was considerably more than for the original type of excavation contained in the proposal and specifications originally made.

At the time claimant was requested to do this additional work he protested to the engineer in charge, Mr. Arnold, that the work was so materially different from that contemplated in the original contract, claimant did not believe that such work should be paid for under the item of "Special Excavation," appearing in the specifications. No definite agreement was made as to the terms of payment and claimant continued to perform the work as requested. The contractor and the State were both to keep an accurate record of the work done for such additional work. Claimant's record of such work is taken from his time-books and pay-roll records. The Division of Highways Engineers kept an accurate time and equipment record for the work in question and their report varies somewhat from that of the claimant. This is explained by the fact that part of the additional work was being done at the same time claimant was engaged in the work under the original contract, and some of the men worked back and forth between the two jobs. It would of course be more difficult to figure out their division of time from a pay-roll record than it was for the highway engineers to keep a time sheet on the one job alone. Claimant has also charged time against the supplemental work for certain foremen, but as these foremen were necessarily employed by claimant in the course of the general work which they were doing, there is no justification for

allowing additional credit for any supervision which they gave to this portion of the work. In addition thereto, the record discloses that it was not necessary for these foremen to put in their time on the extension work for the reason that the air hammers and compressors were operated by an air compressor engineer and his operators which did not need a foreman to supervise the work other than such supervision as the State Highway Engineer might give; further, that under the specification and conditions existing, no cause appeared for the additional service of such foreman. The claimant was paid at the contract unit rate for all the work done, including the additional work called for under the extension or supplemental plans. A final estimate was made and claimant accepted the warrant issued as a result of same. Such acceptance was conditional however and claimant notified the highway department under date of November 5, 1934 as follows:

"In checking over the final estimate on the above mentioned route and section, please be advised that we accept final measurements and amounts due on the various extra items as satisfactory, with the reservation that this final estimate be re-opened to allow payment of a claim by the State of Illinois for additional expense incurred by us in constructing Safety Islands and in revising intersection of Ogden Avenue and Clark Street. Also, to allow the State of Illinois a credit for the difference in price of asphalt used in the binder course of the wearing surface."

In a letter under date of November 19th District Engineer Harger notified his superior Mr. C. M. Hathaway, Construction Engineer of the Division of Highways, in regard to allowing extra compensation, as follows:

"The work involved is entirely outside of the limits of the contractor's original contract. In fact, it lies approximately four or five hundred feet south of the south end of the original contract * * *. When he started to work he found out that the class of work was entirely different than what the original contract called for * * *. At the time, the contractor protested verbally with our Department and insisted that he should be allowed cost-plus for the work as it was not comparable to the excavation he bid on."

Mr. Harger further stated that this work should not be confused with special excavation work on the original contract.

The Attorney General contends that because of the provisions of Article 9.7 of the standard specifications for road and bridge construction, the acceptance of the final payment for work performed under the original contract should act as a bar to any further payment to the contractor for the work

in question. We do not believe that the supplemental or additional work for which claim is here being made was a part of the original contract, and can see no reason why claimant should have found it necessary to decline acceptance of payment for the work which it had fully completed under the original contract, in order to preserve its claim for compensation for the additional work performed under a separate contract. The work for which a claim is here being urged was not contemplated in the original contract, was at some distance from the work originally contracted and of a character demanding a different manner of handling. The engineers for respondent have stated that this work should not be classed as special excavation under the original contract but should be paid for under a cost-plus basis.

The cases of *Urech* vs. *State,* 8 C. C. R. 212 and *Illinois Steel Bridge Company* vs. *State,* 7 C. C. R. 76 do not, we believe, apply to the present situation. Section 4.4 of the standard specifications provides, that

"The Department reserves the right to claim such changes in the plans and the character of work under the contract as may be desirable  *  *  * provided such changes do not materially alter the original plans and specifications."

The court finds that the work upon which the present claim is predicated was a material change in the original plans and specifications, and that the respondent is liable for the additional costs incurred by claimant in performing the work, and that such work should be considered as of the nature of "Force Account Work" as referred to in Article 9.4 of the standard specifications.

Without reviewing in detail the evidence as to the amount of work and the hours of labor for which claimant should be compensated, we find from the evidence that the figures of One Thousand Five Hundred Forty-four and 20/100 ($1,544.20) Dollars, as compiled from the record of respondent's witness Arnold, present a correct total of the amount to which claimant should be entitled on this claim. The deductions from claimant's computation of Two Thousand Two Hundred Seventy-one and 50/100 ($2,271.50) Dollars are apparently in accord with the facts disclosed by the record of the manner in which the work was actually carried on and in conformity with the rules pertaining to the allowance of compensation for extra labor, and amount to a total

of Seven Hundred Twenty-seven and 30/100 ($727.30) Dollars, leaving the above balance of One Thousand Five Hundred Forty-four and 20/100 ($1,544.20) Dollars.

An award is therefore hereby allowed in favor of claimant in the sum of One Thousand Five Hundred Forty-four and 20/100 ($1,544.20) Dollars.